IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
ROBERT A. HICKEY,              :
            Petitioner,        :      Civil Action.
     v.                        :
                               :      NO. 05-10406-JLT
UNITED STATES OF AMERICA,      :
            Respondent         :
```

**MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S**
**PETITION CHALLENGING CRIMINAL SENTENCE**

Robert A. Hickey ("Hickey") has filed a "Petition to Address Federal Question Pursuant to 28 U.S.C. §1331" challenging the criminal sentence imposed on him in United States v. Hickey, C.R. No. 88-341-S.  Because Hickey's pleading is, in fact, a second §2255 motion which has not been authorized by the First Circuit, and because the authorities cited by him do not support reopening a criminal matter that reached final judgment well over a decade ago, this Court should find the Hickey's petition without merit.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On June 15, 1989, a jury convicted Hickey of conspiring with Thomas Kavanagh, John Maguire, and William Ferreira, armed robbery, and use of a firearm during the commission of the armed robbery, in violation of 18 U.S.C. § 371, 18 U.S.C. § 2113(d), and 18 U.S.C. § 924(c).[1] The four conspirators robbed the Bank of New England in Braintree on October 18, 1988, making off with

---

[1] Kavanagh, Maguire, and Ferreira were tried separately. United States v. Maguire, 918 F.2d 254 (1st Cir. 1990).

1

approximately $30,000. [Tr.Vol.I: 68, 72, 76]. Hickey was the lookout and the getaway car driver. [Tr.Vol.I: 74-75]. Hickey argued at trial that the government's charges were a result of mistaken identification. [See e.g. Tr.Vol.I:57-60(defense opening) and Vol.II:42-61 (defense closing)]. The jury rejected this defense, and found Hickey guilty.

Hickey had twice before been convicted of armed robbery (in 1976 and 1977) and these convictions rendered him a career offender for sentencing purposes. [PSR, ¶¶ 33, 35, 38]. The career offender guideline trumped the guideline calculation that would have otherwise been applicable to the armed robbery. Thus, although Hickey's adjusted offense level ("AOL") for the armed robbery would have been a level 20 had he not been a career offender, the career offender guideline raised that offense level to 34 since it was based on the statutory maximum for the charged crime[2]. U.S.S.G. §4B1.1(B). In addition, Hickey's criminal history category was set at VI. The combination of the AOL of 34 and the criminal history category of VI produced a guideline range of 262 to 327 months for the armed robbery conviction. Hickey's §924(c) conviction required an additional, consecutive 60-month minimum sentence.[3]

---

[2] In this case, the statutory maximum for armed robbery was 25 years.

[3] Under the guidelines, a defendant's §924 sentence is the one dictated by that statute, and must run consecutive to the

At sentencing, the Court downwardly departed by 46 months from the guideline after noting the lapse of time between the predicate offenses and the current offense, the defendant's familial status, as well as the defendant's work history, and imposed a 216-month sentence for the substantive armed robbery, a 60-month concurrent sentence for the conspiracy, and a 60-month consecutive sentence on the 924(c) count. The court resisted defense counsel's attempts to reduce the sentence still further, concluding:

> There is an aspect of career criminal to this case, there is no question about it..., and it was his car, Hickey's car, and it's hard – I don't believe those other chaps required much persuasion. But, he's in there pretty thick with them.* * * Well, I have given it sincere consideration.

Hickey's conviction was affirmed on appeal in November 1990. United States v. Maguire, 918 F.2d 254 (1st Cir. 1990). He did not challenge his sentence on appeal.

In 1991, Hickey filed his first motion under 28 U.S.C. §2255 to vacate his conviction and sentence, which was summarily dismissed by the district court. 91-CV-12659-WJS.

In 2001, Hickey filed a *pro se* motion to modify his sentence, pursuant to 18 U.S.C. §3582(c)(2), which permits modification of a sentence when the Sentencing Commission has subsequently lowered the sentencing range. Hickey claimed that

---

guideline sentence required for the underlying offenses. U.S.S.G. § 2K2.4.

3

Amendment 599, which applied to §2K2.4 and guided courts in sentencing defendants for, *inter alia*, §924(c) convictions, had such a retroactive beneficial effect.

In an unpublished memorandum of decision, the district court found convincing Hickey's argument that he was being punished twice as a career offender for carrying a weapon in the commission of a crime,[4] even though it reasoned that the career offender guideline technically neither involved an underlying offense (armed robbery), nor a specific offense characteristic, two aspects otherwise addressed by Amendment 599.  See United States v. Hickey, 280 F.3d 65, 67 (1st Cir. 2002).  The district court re-sentenced Hickey by adjusting his AOL downwards to level 32, the level applicable to unarmed bank robbery,[5] which produced a guideline sentencing range of 210 to 262 months. Id.  The court selected the bottom of the range, downwardly departed 60 months,[6] and imposed a sentence of 150 months on the armed robbery count. It also imposed a consecutive 60 month sentence for the § 924(c)

---

[4]Once under the career offender guideline for armed robbery and once under §924(c).

[5]Reasoning that the "underlying offense for which the defendant was actually sentenced was of being an armed career criminal, and that sentence was enhanced by reason of his use of a firearm in the commission of the robbery." 280 F.3d at 67.

[6]On appeal, the First Circuit believed that the 60 month, as opposed to the original 46 month, downward departure was a mistake on the part of the district court. Hickey, 280 F.3d at 67.

count, bringing the total sentence to 210 months. Id.

The government appealed, arguing that the district court had no authority to modify Hickey's sentence because Amendment 599 did not apply to sentences imposed under the career offender guideline. Id. at 67-68. The First Circuit agreed and found that the plain language of Amendment 599 did not apply to Hickey's situation. Id. at 68. The court noted that Hickey was sentenced as a career offender, and consequently the specific offense characteristics of his underlying offense were immaterial. Id. It went on to find that:

> "Because [Hickey] did not receive an enhancement of his underlying offense when he was sentenced and his sentence under §924(c) had nothing to do with any co-defendants' relevant conduct, Amendment 599 is inapplicable."

Id.

Consequently, the First Circuit vacated the district court's re-sentencing and remanded for reinstatement of the original sentence. Id. Hickey's petition for a writ of *certiorari* was denied. Hickey v. United States, 537 U.S. 855 (2002).

On February 24, 2005, Hickey filed the instant *pro se* petition challenging his criminal sentence in light of United States v. Booker, 125 S.Ct. 738 (2005).

**ARGUMENT**

**A.  Hickey's Petition Does Not Meet the Gatekeeping Rules for a Second or Successive Motion Under §2255**

As noted above, Hickey filed his first collateral attack

under §2255 in 1991, which was summarily denied.  His current pleading, although styled a "Petition to Address a Federal Question Pursuant to 28 U.S.C. §1331," is actually a collateral attack on his sentence based on Booker and should be so regarded by this Court.  See Calderon v. Thompson, 523 U.S. 538, 553 (1998)(prisoner's motion to recall the mandate of a court of appeals' decision affirming the denial of habeas relief "can be regarded as a second or successive application for purposes of" the gatekeeping rules where the motion attacks "the merits of the underlying decision; [o]therwise, petitioners could evade the [gatekeeping] bar" merely by placing unusual labels on their pleadings).

   The final paragraph of Section 2255 provides that "[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain" either newly discovered evidence that establishes the prisoner's innocence, or a new rule of constitutional law made retroactive by the Supreme Court.  28 U.S.C. 2255 ¶ 8.  Section 2244 of Title 28 sets out the certification procedures that must be followed.  It provides that "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."  28 U.S.C. 2244(b)(3)(A).

It is widely recognized that these gatekeeping rules are "jurisdictional," - that is, they limit the power of the district court to consider a second or successive motion absent proper certification from the court of appeals.  See, e.g., Torres v. Senkowski, 316 F.3d 147, 151-152 (2d Cir. 2003); United States v. Key, 205 F.3d 773, 774-775 (5th Cir. 2000); In re Page, 170 F.3d 659, 661 (7th Cir.), modified on denial of rehearing en banc, 179 F.3d 1024 (7th Cir. 1999).  Nor does it matter for the gatekeeping rules to apply that the basis for the second §2255 claim may have been previously unavailable to the petitioner.  See Sustache-Rivera v. United States, 221 F.3d 8, 13-14 (1st Cir. 2000) (describing as "questionable" the assertion that the court should create an exception to the gatekeeping rules for claims that could not reasonably have been presented in an earlier petition).

Thus, where Hickey has filed what amounts to a second §2255 motion and has not first received an order from the Court of Appeals authorizing the filing of his petition, it should be dismissed on that procedural ground alone.

**B.   The Supreme Court's decision in Booker does not apply to Hickey's case since his original sentence was imposed more than 15 years before that decision was issued.**

The decision in Booker[7] does not apply to Hickey's case

---

[7] As the Court is aware, the decision in Booker found unconstitutional the mandatory nature of the federal Sentencing Guidelines. 125 S.Ct. at 746.

because Booker's constitutional pronouncements do not apply to cases that reached final judgment before it was issued. See Ernesto-Cirilo Munoz v. United States, 404 F.3d 527, 532-533 (1st Cir. 2005) (collecting cases from other Circuits and finding that Booker does not allow reopening of cases having reached final judgment absent further guidance from Supreme Court). In Teague v. Lane, 489 U.S. 288, 310 (1989), the Supreme Court made clear that, "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."[8] Justice Breyer appeared to reiterate this view in Booker when he wrote that, "[the courts] must apply today's holdings--both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act--to all cases on direct review," while remaining silent on the application of the decision to sentencing issues raised for the first time on collateral attack. 125 S.Ct. at 769. The Court's silence on this issue is deafening because Teague's principle of retroactive non-applicability of new constitutional rules is well-settled. See e.g., Beard v. Banks, 124 S.Ct. 2504 (2004); Shriro v. Summerlin, 124 S.Ct. 2519 (2004); Horn v. Banks, 536 U.S. 266 (2002). In Hickey's case, there is no question that his conviction and

---

[8] In Munoz, the First Circuit found that none of the Teague exceptions applied to Booker collateral attacks. 404 F.3d at 532-533.

8

sentencing reached final judgment over a decade ago.  He has exhausted his direct appeals and is now seeking to overturn his sentencing decision for the second time through an impermissible collateral attack.

**C.   Even if Booker were retroactive to 1989, Hickey cannot show that his sentence would have been different under Booker.**

   **1.   Hickey cannot demonstrate a reasonable probability that his sentence would have been lower under an "advisory" sentencing guidelines regime.**

Even if Hickey's case had not reached final judgment, his petition for review of his sentence would fail because his sentence was significantly below the guideline range for career offenders, and there is no reasonable probability that his sentence would have been lower had the guidelines not been mandatory.  In order to succeed on a Booker claim in a case that has not proceeded to final judgment, Hickey must be able to demonstrate that he was prejudiced by the district court sentence under a mandatory guidelines regime and that there is a "reasonable probability" that the court would have imposed a lesser sentence if the district court had known that the Guidelines did not mandate the sentence it imposed.  United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005).  In Hickey's case, there is simply no "reasonable probability" that the court would have imposed a lesser sentence.  Indeed, in sentencing Hickey, the court had already downwardly departed from

the guidelines, and faced with the opportunity to reduce the sentence even further, actively chose not to do so, stating that he had given the matter "sincere consideration."  Thus, Hickey has not and cannot show that if the court had considered the guidelines advisory, he would have imposed a lower sentence.

## CONCLUSION

For the reasons stated above, this Court should deny Hickey's petition as without merit.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ S. Theodore Merritt
S. Theodore Merritt
Assistant U.S. Attorney